UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOSE JESUS PEDRAZA PULIDO,<br>ARACELI CORTEZ,<br>N. C. by and through her parent, Araceli Cortez,<br>J. P. by and through her parent, Jose Jesus Pedraza Pulido,<br><br>          Plaintiffs,<br><br>     v.<br><br>RENE REYNOSO, JR.,<br>INDIANAPOLIS METROPOLITAN POLICE DEPARTMENT,<br>CITY OF INDIANAPOLIS,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 1:23-cv-01296-TWP-MJD<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. Plaintiffs Jose Jesus Pedraza Pulido ("Mr. Pedraza"), Araceli Cortez ("Ms. Cortez"), and minors N.C. and J.P. (collectively, "the Plaintiffs") initiated this action asserting claims under 42 U.S.C. § 1983. (Filing No. 1-3.) The Complaint alleges that Defendants Rene Reynoso, Jr. ("Officer Reynoso"), the Indianapolis Metropolitan Police Department ("IMPD"), and the City of Indianapolis (collectively, "the Defendants") violated the Plaintiffs' rights under the U.S. Constitution by subjecting Mr. Pedraza to an unlawful traffic stop, false arrest, and excessive detention. *Id.* at 5–7. The Plaintiffs filed a Motion for Partial Summary Judgment concerning the unlawful traffic stop (Filing No. 42); and the Defendants' Motion for Summary Judgment goes to all claims (Filing No. 46). For the reasons explained below, the Plaintiffs' Motion for Partial Summary Judgment is **denied**, and the Defendants' Motion for Summary Judgment is **granted in part** and **denied in part**.

## I. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).

In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotations marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties

nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

These same standards apply even when each side files a motion for summary judgment. The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003). The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arb. Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citations and quotation marks omitted).

## II. BACKGROUND

On October 30, 2021, Mr. Pedraza was traveling with his wife, Ms. Cortez, and their minor children in a 2015 white Cadillac Escalade ("the Cadillac") in Indianapolis, Indiana. (Filing No. 44 at 2, ¶¶ 4–5.) Officer Reynoso was on patrol in a fully marked police vehicle in the nearby area. (Filing No. 48-1 at 1.) At approximately 3:51 p.m., Officer Reynoso began traveling behind the Cadillac. *Id.* Officer Reynoso observed the Cadillac fail to use a turn signal prior to changing lanes and drive left of center after turning southbound onto Moller Road. *Id.* Mr. Pedraza denies that he changed lanes without using his turn signal and denies driving left of center after turning onto Moller Road. (Filing No. 44 at 3, ¶¶ 12–17); *Id.* at 6, ¶¶ 11–19. Officer Reynoso activated his emergency lights, sirens, and body worn camera and initiated a traffic stop of the Cadillac.

3

(Filing No. 48-1 at 1.)  The body worn camera captures the following events on video, and that video is in the record.  *See* Reynoso Body-Cam Video (Oct. 30, 2021).[1]

Officer Reynoso exited the police vehicle, approached the driver's side of the Cadillac, and identified himself as the police.  *See id.* at 02:14.  Mr. Pedraza immediately asked why he was pulled over.  *Id.* at 02:20.  Officer Reynoso responded that Mr. Pedraza was driving left of center and failed to activate his turn signal at least 200 feet before changing lanes.  *Id.* at 02:20–02:39.  Mr. Pedraza replied that he did activate his signal and denied driving left of center, and he handed Officer Reynoso his driver's license.  *Id.*  Officer Reynoso then asked for Mr. Pedraza's vehicle registration.  *Id.*  After searching for a few seconds, Mr. Pedraza handed him the document.  *Id.* at 02:40–03:30.  Officer Reynoso inquired whether there were any weapons or narcotics in the vehicle, and Mr. Pedraza said no.  *Id.* at 03:39–04:48.  Finally, Officer Reynoso identified Mr. Pedraza's wife seated in the front passenger seat as Araceli Cortez by way of her Mexican identification card.  *Id.* at 04:49–05:09.

When Officer Reynoso returned to his police vehicle, another IMPD officer, Jeremy Bless ("Officer Bless"), arrived on the scene.  *See id.* at 05:50.  Officer Reynoso informed Officer Bless that he thought he saw a gun holster in the center console of the Cadillac.  *Id.* at 06:38.[2]  Officer Bless inquired whether Mr. Pedraza's license plate was expired, and Officer Reynoso responded, "yeah, I literally just now noticed that."  *Id.* at 07:00–07:06.  After running Mr. Pedraza's and Ms. Cortez's information through his computer, Officer Reynoso stated that he was going to get Mr. Pedraza out of the car and talk to him.  *Id.* at 10:29–10:46.

---

[1] Citations to "Reynoso Body-Cam Video" refer to Plaintiffs' Exhibit 3 and Defendants' Exhibit 2 (filed manually, *see* Filing No. 49).

[2] Mr. Pedraza contends that Officer Reynoso could not have seen the gun because it was covered by documents, including the vehicle registration which he retrieved from the center console.  (Filing No. 54 at 4, ¶ 8.)

Officer Reynoso returned to the Cadillac and informed Mr. Pedraza that his license plate tags were expired. *Id.* at 12:44. Mr. Pedraza exited the vehicle to inspect the plates himself. *Id.* at 12:46–13:01. After a short exchange, Mr. Pedraza acknowledged the expiration date displayed on the tags, and Officer Reynoso explained the vehicle would need to be inventoried and towed because the tags were nearly two months expired. *Id.* at 13:10–14:12. Once all the passengers exited the Cadillac, Officer Reynoso began searching the vehicle. *Id.* at 16:15. During the search, he lifted the front center console and located a handgun inside. *Id.* at 17:04. Officer Reynoso informed Mr. Pedraza that he found a gun in the car and that his records showed Mr. Pedraza did not possess a valid handgun license. *Id*. at 21:07-21:50. Officer Reynoso proceeded to handcuff and arrest Mr. Pedraza. *Id.* at 22:00–21:50. While allowing Mr. Pedraza to remove his wallet and other valuable items to be given to his wife, Mr. Pedraza asked Officer Reynoso if he could "take the paperwork for the gun permit that [he] ha[d] in the truck." *Id*. at 23:36-24:00. Officer Reynoso did not respond to this inquiry. Thereafter, Mr. Pedraza was transported to the Marion County jail. (Filing No. 48-1 at 1). Mr. Pedraza was placed in a crowded cell and strip searched each day that he was held. (Filing No. 1-3 at 4).

On October 31, 2021, the next day following the arrest, Officer Reynoso submitted a probable cause affidavit to the Marion Superior Court detailing the preceding events from his point of view. (Filing No. 48-1 at 1.) A judge signed the probable cause order the same day. (Filing No. 48-3 at 1.) Mr. Pedraza was charged with Carrying a Handgun Without a License in violation of Ind. Code § 35-47-2-1, then a Class A Misdemeanor, in Marion Superior Court Case 49D33-2110-CM-033410. (Filing No. 48-5). On November 1, 2021, Ms. Cortez posted a cash bond of $150.00, allowing for Mr. Pedraza's release from custody. (Filing No. 48-4 at 1.)

The misdemeanor charge against Mr. Pedraza was ultimately dismissed. *See State v. Pulido*, No. 49D33-2110-CM-033410 (Marion Super. Ct. 2022). On June 12, 2023, the Plaintiffs filed suit in state court alleging the Defendants violated their constitutional rights under the Fourth Amendment to the U.S. Constitution. (Filing No. 1-3 at 5.) The Complaint asserts four claims under 42 U.S.C. § 1983: Count I alleges Officer Reynoso – and by extension, the IMPD and the City of Indianapolis – committed a "Terry Stop" violation because Officer Reynoso "did not have a reasonable suspicion that Mr. Pedraza committed a crime." *Id.* Count II alleges Officer Reynoso committed false arrest because he did not have probable cause to arrest Mr. Pedraza. *Id.* at 5–6. Count III is an excessive detention claim alleging that Officer Reynoso, the IMPD, and the City of Indianapolis delayed Mr. Pedraza's release from custody and failed to properly train its police officers. *Id.* at 6. Count IV is a claim for compensatory and punitive damages. *Id.* at 6–7. The Defendants removed the case to federal court on July 25, 2023. (Filing No. 1.)

### III.  DISCUSSION

The Plaintiffs seek summary judgment only on Count I of the Complaint, while the Defendants seek judgment as a matter of law on all four claims. The Defendants also contend that Officer Reynoso is entitled to qualified immunity. The Court will first address several threshold matters before proceeding to the merits.

### A. Threshold Matters

First, the Plaintiffs ignore fundamental principles regarding who can sue and be sued in actions brought under § 1983. The Defendants persuasively contend that they are entitled to judgment as a matter of law on the claims brought by Ms. Cortez and minors N.C. and J.P. because the Complaint fails to articulate any constitutional deprivations visited upon them. The Plaintiffs designate no evidence and make no arguments to establish that their rights were violated at all.

The facts in the complaint relate to injuries suffered by Mr. Pedraza alone. Because § 1983 claims are personal to the injured party, neither Ms. Cortez nor the minors may bring a § 1983 action on his behalf. *Ray v. Maher*, 662 F.3d 770, 773 (7th Cir. 2011); *see also Estate of Conner v. Ambrose*, 990 F. Supp. 606, 619 (N.D. Ind. 1997) ("It is a well-settled principle that a § 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else."). Accordingly, Defendants' motion for summary judgment is **granted** with respect to claims asserted by Plaintiffs Cortez, N.C., and J.P.

Second, the IMPD is not a suable entity. Section 1983 imposes liability on any "person" who, while acting under color of state law, deprives an individual of federally protected rights. 42 U.S.C. § 1983. Municipalities and local government entities are among those "persons" to whom § 1983 liability applies. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, the U.S. Supreme Court has instructed that local government liability under § 1983 is dependent on an analysis of state law. *McMillian v. Monroe Cnty.*, 520 U.S. 781, 786 (1997). Under Indiana law, a "[m]unicipal corporation" is a "unit … or other separate local governmental entity that may sue and be sued." Ind. Code § 36-1-2-10. A "'[u]nit' means county, municipality, or township," Ind. Code § 36-1-2-23, and a "[m]unicipality" is a "city or town," Ind. Code § 36-1-2-11. The Seventh Circuit Court of Appeals has recognized that Indiana's "statutory scheme does not grant municipal police departments the capacity to sue or be sued." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) (citing *McMillian*, 520 U.S. at 786).

This Court has consistently held that Indiana municipal police departments are not suable under Indiana law. *E.g.*, *Hounshel v. Bade*, No. 4:23-cv-00122, 2024 WL 1908120, at *2–3 (S.D. Ind. May 1, 2024); *Ware v. City of Indianapolis*, No. 21-cv-2244, 2021 WL 4895320, at *2–3 (S.D. Ind. Oct. 20, 2021); *Davis v. Reid Hosp. (Heath)*, No. 20-cv-523, 2021 WL 1316017, at *2 (S.D.

Ind. Apr. 8, 2021). Thus, as a matter of Indiana law, the IMPD is not a suable entity. Therefore, Defendants' motion for summary judgment is also **granted** as to all claims against IMPD. Officer Reynoso, in his personal capacity, and the City of Indianapolis remain as proper defendants under § 1983.

The Court will now address the merits of the parties' cross-motions with respect to Count I before turning to the Defendants' motion on the remaining claims.

A. **Count I: "Terry Stop"**

Count I claims that Officer Reynoso committed a "Terry Stop" violation by stopping Mr. Pedraza without reasonable suspicion. (Filing No. 1-3 at 5.) The Plaintiffs also name the City of Indianapolis as a defendant in Count I. *Id.* In their brief, Plaintiffs argue "[t]he stop was clearly unconstitutional either because the violation did not occur or that the statute was so vague that it failed to give notice to reasonable people that it even existed." (Filing No. 43 at 5). The Court understands Plaintiff to focus on Mr. Pedraza's right against unreasonable seizures pursuant to the Fourth Amendment to the U.S. Constitution. *See United States v. Cole*, 21 F.4th 421, 427 (7th Cir. 2021) (explaining that traffic stops are typically brief detentions more akin to *Terry* stops than formal arrests and require only reasonable suspicion of a traffic violation). The Defendants argue that Officer Reynoso had reasonable suspicion to stop Mr. Pedraza for at least two traffic violations, so no constitutional violation occurred. (Filing No. 52 at 4–6.)

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A temporary traffic stop constitutes a Fourth Amendment seizure, and thus must be reasonable under the circumstances. *Whren v. United States*, 517 U.S. 806, 810 (1996). "Reasonableness requires an objective inquiry into all of the circumstances known to the officer at the time that he

detained the suspect." *Huff v. Reichert*, 744 F.3d 999, 1004 (7th Cir. 2014). Therefore, in order to stop Mr. Pedraza, Officer Reynoso must have had a reasonable articulable suspicion that he had committed, was committing, or was about to commit an offense before he was stopped. *See id.*; *see also United States v. Phillips*, No. 23-1692, 2024 WL 3842092, at *2 (7th Cir. Aug. 16, 2024) ("[T]he officer's subjective reason for stopping the car … does not undermine the validity of the stop so long as the facts known to officers before stopping the car objectively support the stop.").

As an initial matter, the City of Indianapolis is not a proper defendant for this claim. In *Monell*, the United States Supreme Court expressly held that governmental entities could not be held liable for violating § 1983 on a *respondeat superior* theory; or, in other words, a municipality cannot be held automatically liable for the actions of its officials or agents. 436 U.S. at 691–94 (1978). Instead, government entities may be sued only when the plaintiff alleges a constitutional deprivation visited pursuant to a widespread governmental custom or practice. *Id.* The Plaintiff does not allege that Officer Reynoso acted pursuant to a widespread governmental custom or practice. Therefore, the Defendants' motion for summary judgment as to the City of Indianapolis is **granted**, and the City is entitled to judgment as a matter of law on Count I.

With respect to Officer Reynoso, Mr. Pedraza makes two arguments. First, he asserts that Ind. Code § 9-21-8-25, the turn-signal ordinance, was unconstitutionally vague. When the traffic stop occurred, Ind. Code § 9-21-8-25 provided that "[a] signal of intention to turn right or left shall be given continuously during not less than the last two hundred (200) feet traveled by a vehicle before turning or changing lanes." To support his void-for-vagueness theory, Pedraza points to an Indiana Court of Appeals decision in which one concurring judge criticized the statute as being "employed often to make arbitrary traffic stops." ([Filing No. 43 at 4](#)) (citing *State v. Torres*, 159 N.E.3d 1018, 1022 (Ind. Ct. App. 2020) (Mathias, J., concurring)). In response, the Defendants

conclusively state that the statute "clearly indicated that a turn signal must be used continuously for at least 200 feet prior to turning or changing lanes." (Filing No. 52 at 8.)

The void for vagueness doctrine is complex, and neither party duly grapples with it here. For what it's worth, the statute was repealed in 2022, and Officer Reynoso admitted during his deposition that he could not tell how far 200 feet is for the purpose of stopping someone for a turn-signal infraction. (Filing No. 48-6 at 10.) Even viewing the facts in a light most favorable to Officer Reynoso, a genuine dispute exists as to whether he perceived a violation of Ind. Code § 9-21-8-25. Because summary judgment is not warranted on this claim, the Court will not reach the vagueness issue at this juncture. Should the matter reach trial, the Court invites the parties to develop the issue more comprehensibly in post-trial motions under Federal Rule of Civil Procedure 50.

Second, Mr. Pedraza asserts that he did not drive left of center in violation of Ind. Code § 9-21-8-2(a). In support, he designated the body worn camera footage to confirm that he immediately denied Officer Reynoso's reasons for pulling him over. *See* Reynoso Body-Cam Video at 02:20–02:39. He also submitted Ms. Cortez's affidavit asserting that he did not violate the traffic laws in question. (Filing No. 44 at 3, 6.) To support Officer Reynoso's claim that he did observe a § 9-21-8-2(a) violation, the Defendants cite the probable cause affidavit detailing the offenses (Filing No. 48-1), and Officer Reynoso's own deposition testimony recounting the events leading to the traffic stop (Filing No. 48-6 at 10–11). Notably, the body worn camera does not capture Officer Reynoso's vantage point from inside the police vehicle. *See* Reynoso Body-Cam Video at 00:35. Taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, a genuine dispute exists as to whether Officer Reynoso perceived a violation of Ind. Code § 9-21-8-2(a).

The Defendants argue that even if a dispute exists as to whether Officer Reynoso observed the traffic violations, there is no dispute that the expired license plate was visible, and that Mr. Pedraza was driving with an expired vehicle registration in violation of Ind. Code § 9-18.1-2-3. (Filing No. 52 at 5.) The Court is not persuaded. Although the expired plate was visible for the duration of the incident, Officer Reynoso admitted on video that he did not notice the registration was expired until *after* he made the traffic stop. Reynoso Body-Cam Video at 07:00–07:06. In addition, Officer Reynoso testified that the expired plates were "not the reason" he stopped Mr. Pedraza, (Filing No. 48-6 at 22–23), and this is consistent with his conversation with Mr. Pedraza when he initiated the stop. *See* Reynoso Body-Cam Video at 02:20–02:31. Because reasonableness is determined based on facts known to the officer before stopping the car, *Phillips*, 2024 WL 3842092 at *2, Officer Reynoso's belated discovery cannot support reasonable suspicion, and summary judgment is not warranted on this claim.

In sum, Defendants' cross motion for summary judgment is **granted** with respect to Count I against the City of Indianapolis because the city cannot be held liable for Officer Reynoso's actions based on the doctrine of *respondeat superior*. However, both parties' motions are **denied** with respect to Count I against Officer Reynoso because reasonable jurors could disagree about whether Mr. Pedraza committed any traffic violations.

### B. Count II: False Arrest

The Defendants seek summary judgment on Mr. Pedraza's false arrest claim against Officer Reynoso, arguing that probable cause existed for the arrest. Probable cause is an absolute bar to any § 1983 claim against a police officer for false arrest. *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 713 (7th Cir. 2013) (citation omitted). Probable cause exists "if the totality of the facts and circumstances known to the officer at the time of arrest would warrant a reasonable, prudent person

11

in believing that the arrestee had committed, was committing, or was about to commit a crime." *Id.*

The Defendants contend that probable cause existed because a valid inventory search led to the discovery of a handgun which Mr. Pedraza possessed in violation of Ind. Code § 35-47-2-1. At the time of the arrest, Indiana made it a Class A Misdemeanor to carry a handgun without a valid license. Ind. Code § 35-47-2-1 (2017) (repealed 2022). Mr. Pedraza concedes that he did not have a valid handgun license when he was arrested. His only retort is that Officer Reynoso also discovered his recently expired handgun license and an application to renew it in the center console along with the handgun itself. He argues the old license and renewal application preclude a finding of probable cause.

Mr. Pedraza is mistaken. Although he may have previously been licensed to carry a firearm, that license had expired by the date he was pulled over, and Officer Reynoso's system confirmed the expiration. Therefore, because a reasonable officer in Officer Reynoso's position would believe Mr. Pedraza unlawfully possessed the handgun, Officer Reynoso had probable cause to arrest him.

Importantly, Mr. Pedraza does not dispute the validity of the search that led to the discovery of the handgun, so that argument is waived. *M.G. Skinner and Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) (undeveloped arguments are waived). Even if it were not waived, inventory searches conducted pursuant to standard police procedures aimed at protecting the owner's property are generally lawful. *United States v. Cherry*, 436 F.3d 769, 772 (7th Cir. 2006). The Defendants designated evidence showing that Officer Reynoso conducted the search pursuant to IMPD General Order 7.3, which requires officers to conduct inventory searches prior to towing a vehicle when the tow is ordered pursuant to state law. (*See*

12

Filing No. 48-7 at 2.) Indiana law allows officers to tow vehicles when the officer discovers the vehicle is violating a law, such as when it operates without proper registration. *See* Ind. Code §§ 9-18.1-2-3, 9-18.1-2-10. Because the Cadillac's registration was expired, Officer Reynoso was authorized to conduct the inventory search pursuant to General Order 7.3, even if the wisdom behind the towing decision for an expired tag seems harsh.[3] Therefore, Defendants' cross motion on the false arrest claim is **granted**.

### C. Count III: Excessive Detention

Count III alleges that Mr. Pedraza was subjected to excessive detention because he was "arrested without a warrant for arrest" and "[m]ore than forty-eight (48) hours passed before Pedraza was released." (Filing No. 1-2 at 8.) The Defendants seek summary judgment on this claim, asserting that it was the Marion County Sheriff's Office, a non-party, which had control over Mr. Pedraza's release. (Filing No. 47 at 12.) Pedraza responds that the probable cause affidavit supporting his detention was incomplete and misleading in several respects, and that he "was held in jail in excess of 48 hours … as a consequence of the 4th Amendment violation of the defendants." (Filing No. 54 at 4.)

"[T]he Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite for detention." *Matz v. Klotka*, 769 F.3d 517, 527 (7th Cir. 2014) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 126 (1975)). "Probable cause determinations made within 48 hours of arrest are presumptively prompt." *Id.* (citing *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991)). Stated differently, warrantless detentions without probable cause for more than forty-eight hours

---

[3] Although Officer Reynoso's late discovery of the expired registration cannot support the initial stop, it remains relevant to the question whether probable cause existed for Mr. Pedraza's arrest after an inventory search. *See Martin v. Marinez*, 934 F.3d 594, 599 (7th Cir. 2019) (citing *Vaughn v. Chapman*, 662 F. App'x 464, 465 (7th Cir. 2016)) ("[T]he fact that the evidence was the fruit of an illegal detention does not make it any less relevant to establishing probable cause for the arrest because the exclusionary rule does not apply in a civil suit under § 1983 against police officers.").

are generally unreasonable under the Fourth Amendment. And even if the probable cause determination is made within that timeframe, "an arrestee can still 'prove that his or her probable cause determination was delayed unreasonably'" under some circumstances. *Mitchell v. Doherty*, 37 F.4th 1277, 1280 (7th Cir. 2022) (quoting *McLaughlin*, 500 U.S. at 56).

The Court need not address the parties' arguments because the Court finds a more fundamental problem with this claim: Mr. Pedraza was not held without probable cause for more than 48 hours, and he provides no evidence to support the claim that the Defendants delayed the probable cause determination, let alone unreasonably delayed it. To the contrary, Mr. Pedraza was arrested and taken into custody on the evening of Saturday, October 30, 2021, and a judge issued a probable cause order the next day, Sunday, October 31, 2021. (Filing No. 48-3 at 1). Even if the probable cause affidavit was somehow deficient, his $150.00 cash bond was set promptly and as soon as it was paid, Mr. Pedraza was released on November 1, 2021. Although the conditions of his temporary confinement may have been offensive, there was no delay in his release. Therefore, summary judgment is **granted** on the excessive detention claim.

### D. Count III: *Monell* Liability

Count III further alleges that the policies and customs of the City of Indianapolis caused the delay in Mr. Pedraza's release from custody. (Filing No. 1-3 at 6.) In addition, the Plaintiff claims that the City of Indianapolis failed "to adopt clear policies [and] properly train its police officers[.]" *Id*. (cleaned up). In moving for summary judgment, the Defendants argue that the undisputed facts do not support the alleged delay, and even if they did, the Plaintiff failed to identify any specific policy which led to the deprivation. (Filing No. 47 at 17.)

As explained briefly above, municipalities and local government units can be held liable for § 1983 claims when they are directly responsible for the constitutional deprivation. *Taylor v.*

14

*Marion Cnty. Sheriff's Office*, No. 18-cv-02114, 2019 WL 6492242, at *2 (S.D. Ind. Dec. 3, 2019). To allege a *Monell* claim, the plaintiff must establish that the municipality was the "moving force" behind his constitutional injury. *Monell*, 436 U.S. at 691–95. In particular, the plaintiff must allege: (1) an express policy, widespread custom, or action by an individual with policy-making authority; (2) deliberate conduct; and (3) a causal link between the policy, custom, or action and the alleged deprivation. *Taylor*, 2019 WL 6492242, at *2 (citing *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 598 (7th Cir. 2019)). Inadequate police training may serve as the basis for § 1983 liability only when the failure to train amounts to deliberate indifference to the claimant's rights. *Id.* at *4. The scope of the *Monell* claim is limited by the viability of the individual claims against the officer; as the Court has made clear time and again, "[t]here can be no municipal liability under Section 1983 … unless there has been a constitutional violation in the first place." *Hudkins v. City of Indianapolis*, No. 13-cv-01179, 2015 WL 4664592, at *19 (S.D. Ind. Aug. 6, 2015) (quoting *Smith v. Ciesielski*, 975 F. Supp. 2d 930, 938 (S.D. Ind. 2013)).

As explained earlier, the undisputed facts do not support the claim that the Defendants unreasonably delayed Mr. Pedraza's release from custody, so the Fourth Amendment excessive detention claim cannot form the basis for *Monell* liability here. The Defendants persuasively point out that the Plaintiffs have not identified any specific policy or municipal action that was the moving force behind *any* alleged constitutional violations, including violations arising out of inadequate police training. Therefore, summary judgment is warranted on the *Monell* claim. *See Taylor*, 2019 WL 6492242, at *4 ("A municipality cannot be held liable for a constitutional violation in the absence of a custom, policy or practice that effectively caused or condoned the alleged violations.").

15

Mr. Pedraza's response brief (Filing No. 54) is bereft of evidence to support his failure-to-train claim. He points to an excerpt from the deposition of Officer Kendale Adams purporting to show that IMPD officers were not "tested as to their knowledge of the General Orders." (Filing No. 54 at 6.) But that short excerpt does not, on its own, support the claim that IMPD officers did not receive adequate training on how to conduct inventory searches or on the appropriate circumstances for taking vehicles into custody. (*See* Filing No. 56 at 18–19.) He also failed to designate any evidence to show that a lack of training amounted to deliberate indifference to his rights. Therefore, summary judgment is **granted** on the *Monell* claim in Count III.

### E.  Count IV: Damages and Qualified Immunity

Count IV contains a claim for both compensatory and punitive damages to which Mr. Pedraza believes he is entitled. Because Mr. Pedraza was allegedly "damaged due to loss of income, humiliation and embarrassment, emotional stress, pain and suffering," he requests $5,000,000 to "punish the defendants" for their unconstitutional behavior "and to deter others from committing similar wrongful acts." (Filing No. 1-3 at 6.) The Defendants advance no argument and designate no evidence suggesting Mr. Pedraza is not entitled to damages in this case. They argue instead that Officer Reynoso is entitled to qualified immunity on all the claims.

Because summary judgment is warranted on all except the unreasonable seizure claim, the Court will only address Officer Reynoso's immunity with respect to Count I. The doctrine of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). In resolving qualified immunity claims on summary judgment, the Court must determine whether the plaintiff has both (1) alleged that the official committed acts violating a clearly established

right and (2) adduced evidence sufficient to create a genuine issue as to whether the official in fact committed those acts. *Balsewicz v. Pawlyk*, 963 F.3d 650, 656 (7th Cir. 2020) (citation and quotation marks omitted). "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson*, 555 U.S. at 232. (citation omitted).

As explained above, a material factual dispute exists as to whether Officer Reynoso had reasonable suspicion for the traffic stop. And the Fourth Amendment's protection against unreasonable seizures was clearly established at the time because any reasonable officer in Officer Reynoso's shoes would have understood that stopping the Cadillac without reasonable suspicion violated Mr. Pedraza's rights. *See Navarette v. California*, 572 U.S. 393, 396–97 (2014) ("The Fourth Amendment permits brief investigative stops … when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity."). As such, Officer Reynoso is not entitled to qualified immunity on the unreasonable seizure claim, and a jury could find that Pedraza is entitled to damages. *See Huff*, 744 F.3d at 1004 (affirming denial of qualified immunity where the district court found a genuine dispute of material fact existed as to whether the officer actually perceived a traffic violation).

Plaintiffs may recover compensatory damages from officials, in their personal capacity, for actual injuries in § 1983 cases. *See Freeman v. Franzen*, 695 F.2d 485, 493 (7th Cir. 1982). Punitive damages are also available against the individual official personally "either upon a showing of 'aggravating circumstances' or the defendant's 'malicious intent' to deprive the plaintiff of his constitutional rights or to injure him." *Id.* (citation omitted). Because municipalities are "persons" under § 1983, they, too, can be sued directly for damages. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). But only compensatory damages are available from a municipality in

17

a § 1983 action. *See id.* at 167 n.13 (explaining that punitive damages are not available from a municipality under § 1983).

The Plaintiff points to no evidence showing – and the Court finds no evidence in the record to show – that aggravating circumstances existed or that Officer Reynoso acted with malicious intent to deprive Mr. Pedraza of his constitutional rights. Therefore, a reasonable jury could not conclude that Plaintiff is entitled to punitive damages. A jury could conclude, however, that compensatory damages are warranted for the allegedly unconstitutional seizure. Because the Defendants are not entitled to summary judgment on Count I and Officer Reynoso is not entitled to qualified immunity, the questions of liability and any damages amount are for a jury to decide.

## IV.     CONCLUSION

For the reasons set forth above, the Plaintiffs' Partial Motion for Summary Judgment (Filing No. 42) is **DENIED**.

The Defendants' Motion for Summary Judgment (Filing No. 46) is **GRANTED in part** and **DENIED in part.** With respect to Count I, summary judgment is **granted** as to the IMPD and the City of Indianapolis and **denied** as to Defendant Reynoso. With respect to Counts II and III, summary judgment is **granted** as to all Defendants. With respect to Count IV, summary judgment is **granted** as to the claim for punitive damages and **denied** as to compensatory damages. Defendant IMPD is dismissed from this case, and the claims asserted by Plaintiffs Cortez, N.C. and J.P. are dismissed.

The **Clerks shall terminate** Plaintiffs Cortez, N.C., and J.P., and Defendants IMPD and the City of Indianapolis, as parties in this case. The sole claim remaining is Mr. Pedraza's Count I: "Terry Stop" claim against Defendant Reynoso and his claim for compensatory damages.

**SO ORDERED**.

Date: 2/10/2025

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Kiely C Keesler
City of Indianapolis Office of Corporation Counsel
kiely.keesler@indy.gov

Randolph A. Leerkamp
GRESK & SINGLETON
rleerkamp@gslawindy.com